May it please the court, my name is Chris Odoroski, I represent the appellants, Luke, in this case. I think I've said really most of what I need to say in the brief, but I want to say that in 30 years of doing medical law I've never seen anything like this. We have had two summary judge motions without oral argument, and I think that the district judge in this case completely misread the witness disclosures. I don't think there's any violation of any scheduling order in this case. I think that the judge's opinion, both in 2006 and 2005 and 2008, both reflect the fact that he did not grasp or focus on the exact language of the disclosures. Well, let me, I hear what you're saying. The problem I'm having with this case is if the district court did not abuse its discretion in striking the supplemental declarations, can you help me understand what was before the district court on the initial round of briefing for the summary judgment motion? Yes. First of all, the disclosures, we had multiple experts basically all saying the same thing. This relates to the fact that when you take antabuse, there's a certain percentage of people, small percentage, they're going to experience an idiosyncratic reaction. What happens is that it destroys liver tissue. The way that's measured is by doing liver function tests. The standard which is not disputed is that before you prescribe the antabuse, you do a liver function test. Then at 14, two weeks to a month, you do another follow-up test to see if there's any evidence of rising liver function tests. So is your theory of liability for breach of the standard of care the fact that no liver function tests were ever conducted? Correct. And that's conceded for purposes of this appeal. That was not an issue. The only issue was one of causation. Mr. Odorowski, can I ask you this? When the district court entered its order, had it taken into account deposition testimony as well as the declarations of the experts? Not in the 2005 order, Your Honor, because the deposition occurred after briefing was closed and before the judge made his decision. However, in the second motion, which is a de novo consideration, we presented that deposition testimony specifically to Dr. Rapkin. And I think that's probably the most relevant. Just a second, though. That's after our panel had reversed and asked the district court to revisit the issue. Did you consider these supplemental declarations? And at that point, the district court struck the testimony that you just referenced. So back to my initial question. Assume just for purposes of my hypothetical that if the district court did not abuse its discretion in striking those supplemental declarations, then is your answer to Judge Smith's question that Judge Burgess didn't even have the deposition testimony before him because it was done after the first summary judgment? Correct. Not in the first go-round, but the second one in February of 2008. It was clearly before the court. I presented it in the motion with appropriate affidavits and so forth, not only the deposition testimony of Dr. Rapkin, but also the deposition testimony of one of their experts, Jeffrey Fullman, who agreed that a test done any time during that period of time is going to show elevated liver function tests in this case. To be sure I understand this procedurally, when our court sent this back down, the motion for summary judgment was, in effect, de novo.  You were starting all over again. Both sides put in their declarations, and included in the declarations were the relevant portions of the deposition testimony. That's correct, Your Honor. And so in the – So let me – have you finished your response, Judge Smith? I think I'm here to answer questions, Your Honor. And I appreciate everybody beating up on the facts. All right. You've got to start me from scratch. Your negligence, lack of care claim, as I would understand it, is simply a failure to inform on March the 12th when Goodwin, in response to the court's order, or according to it, gave a prescription for antibuse to Ms. Luke. It's not failure to test. It's failure to inform her. They weren't responsible for where she went to have the enzyme test. And what difference does it make whether it's in ten days or two weeks that the enzyme level is going to be rising? What difference does the second go-around make on your basis for negligence and causation? Well, first of all, Your Honor, you've identified one theory of negligence, and that is informed consent. The major theory of negligence is the fact that there was no baseline testing done with liver function tests. It should have been done before the prescription. And that's the obligation of Goodwin and the clinic. And then there should have been a follow-up liver function test done after the prescription in between two and four weeks. I don't see their responsibility to test or not test. I do see a responsibility, a reasonable claim, that Mrs. Duke should have been told, if you're going to take antibuse, there is a danger and you need to be tested. That's absolutely correct, Your Honor. Tell me what the summer judgment record shows, whether before or after the first trip up here. What does it show? Tell me more about this Goodwin. He's not a doctor, as I understand. He's a physician's assistant. But in that state, he can prescribe. Correct. Can you tell me anything more about what happened on March the 12th exactly and who Goodwin was or what? I can tell you. I've lived through the whole case. I can tell you anything. I know. I want to know what's in the record. Okay. What's in the record is that Mr. Goodwin, the physician's assistant, saw and examined Teresa Luke. Examined her? Well, examined her in the sense that he interacted with her. There's no physical examination per se. He took a very brief history and he prescribed the antibuse. He did not order any tests. Well, he prescribed it because she came saying that the court said I had to do it. Yes, Your Honor. That's true. But he has an independent duty, which is not an issue in this appeal. In order to cut to the chase on this, as I understand it, it is conceded by the defendants that the standard of care was breached. The real question here is proximate causation, isn't it? Correct. Yes. So there's really no issue that both sides are in agreement that, I don't know if he's a doctor, but Goodwin did not comply with the standard of care. The question is whether the failure to test in the time periods indicated was such that it was the proximate causation of this woman losing her liver. Correct. Yes. They may argue that they haven't conceded for purposes of trial, but certainly for purposes of the appeal. Right. But the ambiguity, if I can call it that, on the but-for causation issue, is the two-to-four-week period, is it not? The district court said, look, I can't tell, based on the way the experts have phrased their opinions, whether a test conducted at week three would have been abnormal or not. Therefore, I cannot say that but for the failure to order a liver function test three weeks after March 12, that Ms. Luke and her doctor, her physician's assistant, would have been on notice that there was an abnormal function of the liver. Your Honor, I think that's a correct summation of what the district court held, and I would commend this court to look at the court's order, which is actually quoted at page 27 of the appellant's brief. What's the excerpt of the record site? Do you have it? It's ER Volume 1, page 9. And it's at page 5, line 8. It says, and this is the judge's words, all of plaintiff's experts in initial disclosure stated that the change in liver functions could not be detected until sometime between two and four weeks, which is an incorrect statement. And then if you go to page --. When did the district court know and when did it know it? I'm looking at the initial expert report, and unfortunately I don't have an ER site because I just have a summary from my law clerk, but in the initial expert report there is a statement, had PAC Goodwin obtained a follow-up liver function study within two to four weeks after prescribing antabuse, more likely than not, Teresa Luke's liver function studies would have been abnormally elevated. Correct. And that then leads me back to the prior question. I can't tell from that statement whether a test done at week three would have been positive or not, or abnormal, however you want to describe it. Well, it doesn't make any difference whether it's at week three or day 15 or day 26. This expert, as all of our experts said, and as the defense experts agreed to, that if you did a test within the two to four week period, which is the period when we're saying testing needed to be redone, you do it any time during those two to four weeks, you're going to find in this case that this lady's liver function tests are elevated. But that's not what it says. And I think that's the problem the district court had. Had the initial expert report said that any test beginning on day 14 would be abnormal, then I don't think we'd be here. And, Your Honor, I appreciate the comment. And let's assume, argue, and know that it's ambiguous. We, plaintiffs, as the non-moving party, are entitled to all reasonable inferences that are in the record. Can I take it even beyond just what Judge Tallman indicated? As I look at the declarations, I can easily understand why the district court arrived at its decision. But when I look at the depositions, the ambiguity that you speak of and the presumption is a different situation. Would you agree that looking at the declarations alone, without the depositions, that the district court was reasonably justified in its decision on the proximate causation issue? I'll concede that the district court was reasonably justified in perhaps being confused about what the exact opinion was. However, I think taking the next step in terms of the inferences where they fall, I would not agree. But you're primarily relying, I gather, on what the experts said in their depositions, which are far more time-specific and far more assertive in terms of what you're trying to get at. Isn't that correct? Well, I'm relying on several things, including this agreed order that was urged on me by the defense to say, let's enlarge the time, let's not have reports that are signed by the experts, let's modify the scheduling order. And by the way, we're going to allow, we're going to agree that any testimony that comes in on any matter in deposition is admissible at trial. Mr. Roderoski, I'm with you all the way up to the point that the parties did not provide the district court initially with the clarifying deposition testimony. And the problem that I'm having, the district court is essentially looking at your proof as it was presented to him on the initial summary judgment motion, asking, has the plaintiff established a prima facie case of causation? And I'm not sure that the district court has to draw the inference at summary judgment that you want the district court to draw, which is any test conducted from two weeks on would be positive or abnormal. That's where this case gets difficult for me. I'll concede that in the first go-around, the first motion. But we have a second de novo motion, which this court directed the district court to consider the summary judgment anew. That was the language. Tell me what was stricken then the second time around, because as I understand it, when we sent it back down, Judge Burgess found a failure to comply with the court's scheduling order and therefore struck all the evidence that you now want us to rely on, which clears up the ambiguity. Your Honor, I have no idea, as I stand here today and I have lived this for hundreds of hours, what the purported violation of a scheduling order is. I do not see it. It never happened. We did this timely. Okay. I hear your argument, but I'm just trying to figure out what did the district court know and when did it know it? And I think the answer to my question is without the supplemental deposition testimony and the supplemental declarations of the experts, the district court was stuck with the record as it originally was presented on the first summary judgment motion. But that's the first summary judgment, Your Honor. We have a new summary judgment motion where all of this was laid out in great detail to the district court through my declaration attaching deposition testimony, not only of Dr. Rapkin, but of Dr. Fullman and Dr. Cullison. He struck all that, did he not? I can't tell. He didn't make any reference to Rapkin or Cullison. It was the same problem that we had the first go-around. We couldn't even tell if he'd received and looked at these declarations. Just as a reminder, in the first go-around, they had in their reply objected, it wasn't a formal motion to strike, the declarations, and we never had an opportunity to address that. And this court, when it was up here on the first time, couldn't tell either whether or not the declarations had even been considered. And that's one of the reasons it was sent back. So I can't tell on this time either what it was that. I thought there was a motion. Didn't Family Care and Urgent Medical Clinics make a motion to strike the second time around? They did make a motion to strike, yes. And in the motion to strike, didn't it list what it was that the movement wanted stricken? Your Honor, I believe it did, yes. The court granted that motion. Did it not? Without referencing anything. It granted the motion. So if I look at the docket sheet and I read the motion, which specifies what it was that they wanted stricken, and I see that the court enters an order granting the motion, what more do I need to know? Perhaps nothing more. But I would also point out, and I think I'm over time here. I told you guys when I offered you the opportunity to come in, I'd give you extra time. So this is the quid pro quo. Thank you, Your Honor. I think that the Ninth Circuit cases, it seems like the Johnson, the Wong, and the Yeti cases are three very applicable. Also the Noyes case, which is the NYES, which is the most recent, I think, 2007 case. All of those cases go through an analysis. They do not just say, well, these witnesses are stricken and it's over. They go through an analysis of what was done in terms of diligence. Was there prejudice? How does this handicap the defense or the plaintiff in terms of pursuing the claim or defending the trial? And they all go through this analysis. I would submit respectfully that under the Wong and the Noyes decision, the Noyes reversed the district court for an abusive discretion, that this is one of those cases where, okay, maybe there's an ambiguity in the way the disclosure is. It needs to be read in a way that's favorable to the non-moving party, and that's in the first go-around. In the second go-around, we now have this additional testimony of Dr. Radkin, and the scheduling order on its face, by its own terms, allows deposition testimony to be used, whatever the matter is, at trial. And I would respectfully submit that we fell within this all the way along and that this should have been considered, that on its face it demands reversal and back for trial, and I would submit to a different judge at this point. Can I ask one more question, please? On the second go-around, the deposition of Dr. Radkin and Dr. Fulman, were they both experts whose names were submitted at the beginning? These were not the new people that were at it, right? Well, actually, no one was new. I understand your perspective. No, Radkin was there all the way from the get-go. Okay. Yes. What about Fulman? Fulman was their expert, and he was timely. Okay, he was their expert, okay. But my point in showing that is that he agrees also during this time period. So if you get away from the 10-day issue and you go, okay, what about the two to four weeks? Where are we on the testimony of that? If you look at Dr. Radkin's deposition testimony, which is at ER, bottom two, page seven, he's asked very specifically by a very experienced defense trial lawyer in this case, is it your opinion that the liver function tests would have been abnormal two weeks after she was given the medication? Answer, yes. And then in Dr. Fulman's testimony, which is at ER, volume two, page 17, I ask, well, between March 22nd to May 6th, that would be 10 days after she started the NMUs during that period of time, if liver function tests had been done at some point, more likely than not, that would have revealed the sub-Fulman hepatitis. Answer, more likely than not, liver function tests would have been abnormal during that time frame you described. So if you step back and look at where are we with the testimony, there can't be any question that there are issues of fact with the prior fact. And I would respectfully submit that in this case, the district judge abused his discretion by not taking into account the harshness of the penalty here, the fact that maybe this could be read two different ways in terms of the disclosure, the fact that there's actually deposition testimony that's in compliance with the modified scheduling order. And I, again, take disagreement that there's any violation of any scheduling order here. I do not. I don't see it. Okay. Any other questions, Your Honor? I think we have your argument in mind. Thank you, Mr. Onorofsky. Thank you. May it please the Court. Janet Schreyer on behalf of the defense. Schreyer. Thank you very much. I think I want to start right what we were talking about, because it was right fresh in everyone's mind about what was in the record at the time of the second summary judgment motion. And counsel just pointed to the testimony of Dr. Fulman and the deposition of Dr. Rabkin. And then I'll go back to why the discovery sanction was correct and that sort of thing. Dr. Fulman's deposition testimony in the excerpt of record makes it crystal clear on page 17 of ER that he could not say whether it was within two to four weeks or ten days or any other time frame. Specifically, he said, I can't say it started at that time. All we have is when her symptoms started, two weeks prior to the June visit. Sometime before that, the limbic function abnormalities occurred. Was it May 6th? Was it April 15th? I don't know. It's hard to say exactly what time period. He made it crystal clear in his deposition testimony that was submitted he could not put a time frame on it. Can I just interrupt you for a moment? Yes. There are other parts of the deposition that seem to raise some material issues of fact about this. What I want to be sure I understand is this. As I understand the record, and I'm looking specifically at the joint motion for approval of stipulation regarding expert witnesses in proposed order that was on the motions calendar August 2005, the stipulation provided that in subparagraph, I guess it's part two, sub two, in addition to being permitted to testify about matters addressed in each expert witness's disclosure, a properly disclosed expert is also permitted to testify regarding any matters addressed in that expert's deposition. Do you agree that this was a signed stipulation that the court approved? I agree that that was the stipulation. Okay. Given that fact and given the fact that, at least taking Mr. Odorowski's word on this, both Rapkin, who was his expert, and Fulman, which was your expert, were amongst those that were disclosed from the get-go, why would not their deposition testimony continue to be before the court in the second go-round on the motion for summary judgment, regardless of whether there was a breach of the court's order regarding other deposition testimony or other testimony? Dr. Fulman's clearly was. And Dr. Fulman's testimony, when read in its entirety, does not create an issue of fact because he clearly states he can't It cannot be said when within the time frame of two weeks, ten days, or beyond, all the way from there. Dr. Rapkin. So Dr. Rapkin, his testimony was taken after the disclosure. Dr. Rapkin's expert disclosure stated his expert opinion had to do with the standard of care that required testing within two weeks, two to four weeks, and that if the test had been done within two to four weeks, it would have shown up within that time frame, but didn't say when within that time frame and certainly didn't say the ten-day time frame. For purposes of summary judgment, does it need to say that? In other words, we're talking about causation here. As I understand his testimony, I'm looking at, let's see, this is the deposition of John M. Rapkin, and it looks like it's page three of the deposition. I apologize. I don't know where it is in the record. But the question is, do you have an opinion if she would have been called back for examination two weeks after she was first given and abused as to what findings, history, and liver function studies would have shown? Answer, yes, I do. Question, what is your opinion? Answer, my opinion is that had she had a follow-up liver function studies, they very likely would have been abnormal if they were obtained two weeks after initiation of therapy. How abnormal, I am not certain, but I do expect that they would have then had additional follow-up. So doesn't that alone raise an issue of material fact that should be considered by a trier of fact rather than in a summary judgment motion? If that deposition was properly before the court, yes, and we say it is not properly before the court. Even though the stipulation said from the get-go that the deposition testimony of the experts that had been properly disclosed would be admissible for trial. And that's the rub, the properly disclosed. Because the disclosure as to Dr. Ratkin stated the causation as within two to four weeks but does not put a finer point on it as the subsequent testimony does. His deposition was not taken because we were fine with that testimony because it didn't fairly establish causation. You'd get a directed verdict at trial if that testimony was the only causation testimony. So your perspective is that even though the stipulation called for depositions, given the fact that the deposition wasn't taken, I gather, until it came back from our court, is that correct? No. So let me ñ I need to explain that just a little bit more. So just here's the position we were in. We filed a summary judgment relying on the disclosures. Right. Rule 26 says you have to give all the opinions of your experts. We assumed that was the case. The summary judgment was prepared and filed. They then come in with Dr. Ratkin and these other disclosures, statements stating the more specific 10-day timeframe, which does implicate causation. We would not be entitled to a directed verdict on that. We have just a few days left for discovery deadline within the context of the case in the district court. Right. Consequently, to be safe, we went forward and took Dr. Ratkin's deposition, and that's when this testimony came out. It was in December of 2005, and it was before the first go-around in this court. Given that fact, excluding the two new people, I could certainly understand why you would say this doesn't fall within the stipulation. But with respect to Dr. Ratkin, who I gather does, everybody seems to agree with that, why would that not relate back to that? Why would not the deposition that was taken of Dr. Ratkin be included within what everybody agrees was within the normal time period? Well, it turns the discovery disclosure of experts on its head to say you can say what they are, then you can change it in response to a summary judgment motion to meet an argument that you apparently didn't anticipate. And then as long as they rush in and take the deposition to get in within the discovery deadline, then say, oh, the deposition cures it, see, you knew. So from your perspective, on the remand, the district court was looking at the very same evidence that it looked at the first time. It was not permitted, or didn't have any obligation, I should say, to look at the deposition testimony that took place after the initial summary judgment was submitted. No, I think the district court was permitted to look at this de novo and make a decision as whether to the material that was provided late, that was not originally in the disclosures in August of 2005, would or would not be admitted into evidence or excluded under Rule 37. That's what this Court permitted Judge Burgess to do. And you view that as what, an abuse of discretion standard? Yes. This Court has held it to be an abuse of discretion standard. So that I understand, you moved to strike that testimony the second time, before the second summary judgment hearing. Correct. And the Court granted your motion. Yes. And just to be clear, we objected to it in our summary judgment reply the first time around and gave very specific objections. Plaintiff did nothing in opposition to those objections, but you couldn't tell from the Court's decision whether it did or did not look at those or rule on our objections. So our panel said we're sending it back down so that the district court can specifically explain what it was that it relied on. Right. And you filed a motion to strike, which the district court granted. It granted. Yes. So the district court did not have before it the late deposition testimony of Dr. Rapkin once the motion to strike had been granted. Correct. And it's not anything ambiguous about what the trial judge ruled on the motion to strike. And I'm referring to page 11 of the excerpt of record. And Judge Burgess says, Therefore, the testimony, opinions, and information provided by plaintiff's experts is strictly limited to that which was disclosed prior to summary judgment and the expiration of the discovery deadlines. And his ruling in that regard is reviewed for an abuse of discretion, the exclusion of the discovery material. He is entitled to latitude in looking at the scope and meaning of his own orders. And I suggest to you, Judge Smith, that he ruled that as to the Rapkin deposition, that that was not proper expert testimony. What came in the deposition afterwards was the not disclosed information. So, in other words, from your perspective, because the plaintiffs didn't have that deposition testimony prior to the first hearing for summary judgment, the first motion for summary judgment, the district court did not have any obligation to consider it the second time, even though there was a stipulation that existed previously that such testimony would be admissible for trial purposes. The judge had a right to review what was before him and determine that that expert testimony was not fairly disclosed in the first instance. And I think looking through, the deposition was simply taken because of the improper disclosure. So if they improperly disclosed things that weren't disclosed by the discovery deadline, and then we follow up with a deposition so we don't follow up so we don't rule meaningless, if that was somehow to get that deposition. Believe me, counsel, I understand that. I really do. What I'm troubled by here is what seems to me in this stipulation to be an agreement between the parties that at least as to deposition testimony on experts that were properly disclosed, it creates an exception, basically. Why is that wrong? Why is that perception incorrect? Well, because it states properly disclosed. Properly disclosed means full opinions. You agree that Dr. Rapkin's name was properly disclosed, right? I agree that his name was properly disclosed. So you had the first round go around, a declaration was submitted, admittedly that yielded the very result that the district judge came up with the first time, because it didn't deal with the proximate cause issue enough. On the other hand, when it came back the second time, the court said, our court said, take a look at this. We need to know what you considered. This is a noble review. You have the stipulation of the parties that says that the depositions of properly disclosed people, and I'm quoting here, a properly disclosed expert is also permitted to testify regarding any matters addressed in that expert's deposition. Now, that contemplates that that will be available for trial. And if it's available for trial and the parties stipulated to that, why is it not also available? Even if there was a violation of the other portions of the order, and I'm not here to argue about that. I understand. I don't understand why that does not give the plaintiff some possible relief on that issue. Because of what Rule 26 requires, what does properly disclosed mean as far as an expert is concerned? It doesn't say you simply name them and anything they have to say ever on the face of the earth is admissible. You have to state, it's a very, very specific rule. You have to set out in your expert disclosure all opinions of an expert and the reasons for them. And so Dr. Ratkin's name and his opinions that were disclosed properly were limited to the more general statement within two to four-week time frame that was originally disclosed. And I believe that while an order such as the one, the stipulated order that was entered into, is appropriate and correct, you still have to look at what the meaning of properly disclosed was under Federal Rules of Procedure 26. Mr. Schwartz, let me say, coming at Judge Smith's concern from a slightly different perspective, would your position be that had Dr. Ratkin's testimony been taken earlier in a timely fashion during the discovery period, that under this stipulation the district court could properly have considered that testimony, but the problem was that it was taken too late, proffered too late? That's a harder question. A, that isn't what happened, but that's a harder question. Well, you might not have been able to file the summary judgment motion if that testimony had been clarified before the summary judgment was filed. We wouldn't have. So, I mean, that's sort of where the harm of all this comes from, because we didn't need his deposition because we knew what he was going to say and it wasn't harmful. And so then when they give this late disclosure, like, oh, that's bad, that's harmful, that would create an issue of fact, we need to find out more about it were it to come in. So I don't think we'd ever have been in that position to even do the summary judgment if that were the case. What the district court was doing here was looking at its discovery scheduling order and saying, look, this just came in too late, and as a sanction for violating my discovery order under Rule 26 for experts, I am going to strike the late testimony of Dr. Ratkin and I won't consider it. I believe he found that it didn't fall within his discovery order, yes. And he struck all the things that were not part of the original disclosure, the statements and the nature and the spirit of it. And what's interesting is that when we were here talking about the nature of this motion to strike and, you know, how the district court did or didn't rule on it, I mean, the court, Judge Tashima, last time said, well, I argued that, well, we know that the court must have granted the motion to strike because otherwise we wouldn't be here. I conceded that there is an issue of fact if you consider these new materials. So I suggest to you we wouldn't be going back in the first place if the original record was sufficient. And I think under the circumstances that the court should affirm here, because the trial court looked at this and exercised its discretion and has a right to look at its own scheduling order and interpret what the scheduling order means in the spirit of the case. And when you look at the whole history of this and now we're back here again, they didn't even argue substantial justification when they went back down. Whoops, my light is on. I'm sorry. I suppose you could have extra time. I gave Mr. Motorosky extra time. Go ahead. So the Ninth Circuit invited them. And they said, well, maybe when they go back down they'll be able to show substantial justification. So the automatic exclusion, which is provided under Rule 37 of Federal Rules of Civil Procedure, fraud, discovery, violation, there might be an exception to that. They might show substantial justification. They have never tried to do that. They didn't explain it in the trial court. They didn't explain it here the first time. They still don't explain why this late justification in the cases that this court has decided, merely not anticipating an argument that was going to be raised by defendant on summary judgment is not a sufficient justification to violate a discovery order. And in this case, it shouldn't be held that way either. Again, the trial court exercised his discretion. His decision was not clearly erroneous. We've wasted a lot of time here getting here because of the procedural problems that we've gotten to. Plaintiff's made new arguments on appeal for the first time here that he's made previously. And I'm not going to go into those. But I'm going to ask you not to look at that, because after this many times around, we shouldn't have a chance to look at new things. But I suggest the trial court was well within its discretion to do what it did, and this case ought to be put to rest once and for all. All right. Thank you very much. Mr. Odurofsky, I'll give you a minute rebuttal. All right. Thank you, Your Honor. Very briefly, in looking at the district court's order of February of this year, it's at page 7 of the order. And he says, Therefore, the testimony, opinions, and information provided by plaintiff's experts is strictly limited to that which was disclosed prior to summary judgment and the expiration of the disclosure deadlines. Now, if we didn't have a separate modified order in place, they'd have a great argument here. I probably wouldn't be standing here. But the fact is that we had modified by agreement what the deadlines would be. And do you believe that that modified agreement included the depositions of Dr. Rapkin and Dr. Fletcher? Without a doubt. Dr. Rapkin's deposition had already been scheduled before the motion. We had a whole series of depositions scheduled, and we had another six weeks before. But is she not correct? When you have a summary judgment, everybody's supposed to put in their best shot. She's saying, didn't you think that it was enough or important enough to have this deposition testimony? It hadn't been taken yet. You didn't put it in. The court has to rule based on what's there. You were too late. What's wrong with that argument? Well, first of all, they didn't file a motion to strike. They made an objection in their reply. I had no opportunity to address that. Dr. Rapkin's deposition was already set up, as were several of the other depositions. I never in a million years would have dreamed that it would have been interpreted the way it has been and that we'd be going through all this. The disclosure. Why didn't you say to the court, Your Honor, we'd like a continuance because we've got these depositions scheduled. We want to get those in. Because we submitted the declaration that established the causation. The district court disagreed with you about that, and let's just say hypothetically that we could see why the district court arrived at its conclusion. Isn't the situation here that you gave it your best shot, it fell short, and then you added these additional items in order to make it up? The declarations of our experts were submitted timely. There's nothing late about them. They were submitted in accordance with the time frame. But the final two doctors, I believe both were doctors, and the depositions came in after the initial round. Isn't that correct? Correct. Okay. And my question is, why weren't those submitted the first time, other than the fact that you found that the district court was not satisfied with what you had previously submitted? Well, they occurred after the briefing was all over. But you didn't make a Rule 56-F2 motion. No, I didn't see any point to it. I mean, we'd already submitted our contravening declarations, which established the issues of fact, and we're continuing on with discovery. The problem, though, is that 56-F2 contemplates a continuance in order to permit those depositions to be taken. Well, we were still within the discovery cutoff. The depositions were scheduled after the discovery cutoff. No, they weren't. They were not. Well, a summary judgment had already been noted, hadn't it? Yes, but that was noted still within the discovery cutoff period. The depositions were going to be taken after the noting date on the district court docket for hearing the summary judgment motion. Correct, but still within the discovery cutoff. Isn't that what Rule 56-F is written for, to cover just that situation, where you have evidence that you want the district court to consider before it rules on the summary judgment motion, and so you say, time out, Judge, we need a continuance here so we can get this done? I think the best way I can answer that, Your Honor, is that I felt quite comfortable with all of the submissions that we'd provided by declaration, that whatever it is that was going to be said in Dr. Grafton's deposition would have just been the same information. But doesn't that get back to the very point that your opposing counsel made, which was we looked at the declarations that the plaintiffs submitted at the time of the first motion for summary judgment. We didn't think they established causation. We weren't worried about it. We weren't worried about taking the deposition. Why isn't she correct about that? Why shouldn't you be judged based upon your case be judged based upon what was submitted to the district court the first time? Well, in this case, we were still in the middle of discovery, well, within the discovery cutoff. We had all these depositions set up, and we were moving for trial. But you're an experienced lawyer. You know that if there's a summary judgment that goes against you, you're never going to get to the subsequent discovery. Why didn't you follow the procedure that Judge Tallman mentioned in 56-F? I never felt a reason to because we'd already submitted our declarations, which established that. It never even occurred to me at that point in time. But in the second go-around, we did submit all that because we have that agreement that allows us to introduce into trial. Well, I think we understand the argument, Mr. Odorowski. Thank you both very much. The case just argued is submitted. Thank you very much, Your Honor. Thank you, and thank you for accommodating the court schedule. We will stand adjourned until 9 a.m. tomorrow morning. All rise.
judges: Tallman, Smith, Reavley